UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/21/2026

OTTER PRODUCTS, LLC,

Plaintiff,

-against-

GRAND RAPIDS LIQUIDATORS LLC d/b/a "KORTING" and "KORTING OUTLET"; ROSS KUNZI; BLAKE KUNZI; and JOHN DOES 1-5.

Defendants.

No. 25-cv-2294 (CM)

**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

McMahon, J:

Plaintiff Otter Products, LLC ("OtterBox" or "Plaintiff") brings this action against Grand Rapids Liquidators LLC d/b/a "Korting" and "Korting Outlet" ("Grand Rapids"), Ross Kunzi, Blake Kunzi, and John Does 1-5 (collectively, the "Defendants"), asserting causes of action for trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Counts 1 and 2); unfair competition, false designation of origin, and false description in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count 3); trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (Count 4); and unfair and deceptive business practices in violation of New York General Business Law § 349 (Count 5). Plaintiff, the manufacturer of "OtterBox" cases for mobile devices, alleges that

Defendants illegally sold and distributed counterfeit "OtterBox" phone cases bearing Plaintiff's federally registered trademarks.

Before the Court is Plaintiff's motion for summary judgment on all claims. For the reasons set forth below, that motion is DENIED.

**Background**

Plaintiff Otter Products, LLC ("OtterBox" or "Plaintiff") manufactures and distributes "OtterBox" mobile phone cases. Plaintiff is the owner of numerous trademarks registered with the United States Patent and Trademark Office, all of which are valid, in full force and effect, protectable, and exclusively owned by Plaintiff. *See* Declaration of Stacey Lukas ("Lukas Decl."), Dkt. No. 36, Ex. G. These trademarks are registered under a class of goods that includes protective cases for cell phones. *See id.* Seven of these marks are at issue in this lawsuit.

Defendant Grand Rapids Liquidators LLC d/b/a "Korting" and "Korting Outlet" ("Grand Rapids") operates a high-volume liquidation business specializing in reselling customer returns and excess inventory at three retail locations and on the internet. *See* Dkt. No. 41-2, ¶ 6; Dkt. No. 1, ¶ 8; Dkt. No. 17, ¶ 8. Grand Rapids primarily sells inventory sourced from Amazon. *See* Declaration of Ross Kunzi ("Kunzi Decl."), Dkt. No. 42, ¶ 3. It receives approximately 1-2 truckloads of inventory per week per site from Amazon fulfillment centers with which it contracts. *Id.*, ¶ 6. Each truckload contains tens of thousands of mixed items; Grand Rapids does not choose or curate the inventory. *Id.*, ¶ 5. While Grand Rapids primarily sources inventory from Amazon, it has recently transitioned to fulfillment-center liquidation contracts through B-Stock, Amazon's official liquidation partner, due to changes in Amazon's liquidation programs. *Id.*, ¶¶ 3-4, 46.

Defendants Ross Kunzi and Blake Kunzi are the founders and owners of Grand Rapids. Dkt. No. 1, ¶ 9; Dkt. No. 17, ¶ 9. Blake Kunzi is also the owner of the "korting_outlet" eBay account.

Plaintiff alleges that on October 15, 2024, it discovered suspicious listings of OtterBox products on eBay from an eBay seller with the username "korting_outlet," and that, "Just from looking at these listings, Plaintiff could determine that the goods being depicted were Counterfeit OtterBox cases." Lukas Decl. ¶¶ 11, 12. The same day, Plaintiff purchased an "Otterbox Defender Case Compatible with Samsung Galaxy S23 Case, Black" cellphone case for $13.99, which it alleges is far below the usual retail price of the case. *Id.*, ¶ 13. Upon receiving the phone case, Plaintiff "confirmed that it was not authentic OtterBox merchandise and did, in fact, bear counterfeits and infringements of the Plaintiff's Registered Trademarks." *Id.*, ¶ 14.

After Plaintiff requested that eBay shut down the listing and provide ownership details of the account in question, eBay disclosed contact information for Blake Kunzi, the owner of the "korting_outlet" eBay account. *Id.*, ¶ 15. On December 2, 2024, Plaintiff's counsel sent a cease-and-desist letter to Defendants' email address registered with eBay. *See* Declaration of Michael Lee ("Lee Decl."), Dkt. No. 35, ¶ 6; Dkt. No. 35, Ex. A. Defendants did not respond to this letter. Lee Decl., ¶ 7. Counsel sent additional emails to Defendants on December 9, 2024, December 12, 2024, and December 23, 2024, all of which went unanswered. *Id.*, ¶¶ 10-13; Dkt. No. 44, ¶ 6. Defendants insist that they did not see the cease-and-desist communications from Plaintiff's counsel because they were sent to an email inbox that is not monitored and not connected to Defendants' main business accounts. Kunzi Decl., ¶ 26.

On March 10, 2025, Plaintiff purchased an "Otterbox Defender Case Compatible with Samsung Galaxy S24 Ultra Case 5g" from the "korting_outlet" eBay seller for $19.99, which it

claims is "far below the usual retail price of this case." Lukas Decl., ¶ 19. As with the first purchase, Plaintiff "received and reviewed the Second Purchase and confirmed that it was not authentic OtterBox merchandise and did, in fact, bear counterfeits and infringements of the Plaintiff's Registered Trademarks." *Id.*, ¶ 21.

During the course of discovery in this lawsuit, Defendants also produced to Plaintiff a large number of their allegedly infringing phone cases, which Plaintiff determined were "not authentic and bear counterfeits and infringements of the Plaintiff's Registered Trademarks." Lukas Decl., ¶ 23. Plaintiff asserts that "it is easy to determine that the Counterfeit OtterBox cases distributed by Defendants all came from the same source [because the] Counterfeit OtterBox Cases bear the following, among other, similarities: Defendants' illegal cases are all the DEFENDER series; (2) Defendant's illegal cases are shipped in boxes that are the same size; and (3) Defendants' illegal cases all bear the same indicia that the product is not authorized." *Id.*, ¶ 24.

Defendants do not dispute that Grand Rapids distributed merchandise bearing Plaintiff's registered trademarks. What Defendants contest is whether the phone cases distributed by Grand Rapids were, in fact, counterfeit OtterBox products. And they maintain that to the extent Grand Rapids *did* sell counterfeit OtterBox products, Defendants did not do so knowingly. *See* Kunzi Decl., ¶ 17. According to Defendants, each OtterBox phone case Grand Rapids received appeared to be legitimate in packaging, construction, and labeling; nothing about the products' appearance or condition suggested they were fake, and at no time did Grand Rapids have reason to suspect these were counterfeit products. *Id.*, ¶¶ 16, 57. Although Grand Rapids occasionally receives negative feedback, as does any high-volume seller, it has never received any customer complaints suggesting that OtterBox-branded items were counterfeit. *Id.*, ¶¶ 24-25. Had Grand

Rapids believed that the products were counterfeit, it would not have listed them for sale. *Id.*, ¶ 16.

Defendants claim that they did not become aware of this issue until Plaintiff's counsel sent a copy of the complaint to their active email accounts. Kunzi Decl., ¶ 27. After being served with the complaint, Defendants removed all OtterBox-branded listings from eBay and have not sold any OtterBox-branded items since. *Id.*, ¶ 30. Defendants concede that some OtterBox-branded products were not removed from eBay but contend that any remaining listings were unintentionally overlooked during the removal process due to the high volume of products listed on their eBay store. *Id.*

Plaintiff filed its complaint on March 20, 2025. *See* Dkt. No. 1. The complaint asserts causes of action for trademark infringement and counterfeiting in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114 (Counts 1 and 2); unfair competition, false designation of origin, and false description in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (Count 3); trademark dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c) (Count 4); and unfair and deceptive business practices in violation of New York General Business Law § 349 (Count 5). *See id.*

On November 11, 2025, Plaintiff moved for summary judgment on all claims. Dkt. No. 34. That motion is presently before the Court.

## Legal Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see generally Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "In determining whether summary judgment is appropriate, [the Court] must resolve all ambiguities and draw all reasonable inferences against the moving party." *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

In seeking summary judgment, the initial "burden is upon the moving party to demonstrate that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). Where the non-moving party would bear the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. If the movant "demonstrates 'the absence of a genuine issue of material fact,' the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact" to survive summary judgment. *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011) (citation omitted) (quoting *Celotex Corp.*, 477 U.S. at 323).

## Discussion

### 1. Trademark Counterfeiting (Count 1), Trademark Infringement (Count 2), and Unfair Competition, False Designation of Origin, and False Description (Count 3)

Plaintiff's first and second claims for relief allege trademark counterfeiting and trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114. Plaintiff's third claim for relief alleges unfair competition, false designation of origin, and false description in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

Section 32 of the Lanham Act prohibits the use in commerce, without consent, of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods," in a way that is likely to cause confusion with plaintiff's registered trademarks. 15 U.S.C. § 1114(1)(a). Section 43(a) prohibits similar conduct, though it is not limited to registered trademarks. *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 477 n.2 (2d Cir. 1996). Section 43(a) deems liable for false designation of origin "[a]ny person who . . . uses in commerce any container for goods . . . name, symbol, device . . . or any false designation of origin . . . which is likely to cause confusion." 15 U.S.C. § 1125(a).

Under either section, a plaintiff must establish that (1) it has a valid mark entitled to protection, and (2) the defendant's use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods. *Christian Dior Couture SA v. Lin*, 744 F. Supp. 3d 312, 315 (S.D.N.Y. 2024).

Plaintiff has satisfied the first of these two elements by providing undisputed evidence that it owns the registrations to the marks at issue. *See Lane Capital Management, Inc. v. Lane Capital Management, Inc.*, 192 F.3d 337, 345 (2d Cir. 1999) ("A certificate of registration with the [Patent and Trademark Office] is prima facie evidence that the mark is registered and valid.").

At the second step, courts in the Second Circuit assess whether an infringing use of a mark is likely to cause consumer confusion by applying the eight-factor test set out in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495–96 (2d Cir. 1961). Under a counterfeit theory of trademark infringement, however, a detailed assessment of the *Polaroid* factors is unnecessary. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 1996 WL 719381, at *6 (S.D.N.Y.

1996). Instead, "the Court need only determine the more fundamental question of whether there are items to be confused in the first place – that is, whether the items at issue here are, in fact, counterfeit and whether Defendants sold those items." *Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003).

Here, there is no dispute as to whether Defendants sold the items at issue; Defendants admit they distributed products bearing Plaintiff's marks. *See* Dkt. No. 41-2 at ¶ 7. The Court thus need only determine if there is a genuine dispute as to whether the items sold by Defendants are counterfeit. I conclude that there is.

In support of its claim that Defendants' phone cases are counterfeit OtterBox products, Plaintiff submitted the affidavit of Stacey Lukas, Otter Products' Senior Manager, Brand Protection, who explains that "Just from looking at [Defendants' eBay] listings, Plaintiff could determine that the goods being depicted were Counterfeit OtterBox Cases." Lukas Decl., ¶¶ 1, 11. Lukas further states that he "reviewed the [two phone cases Plaintiff purchased from Defendants] and confirmed [they were] not authentic OtterBox merchandise and did, in fact, bear counterfeits and infringements of the Plaintiff's Registered Trademarks." *Id.* ¶¶ 14, 21. The basis for that determination, however, is entirely unclear. Lukas does not provide any factual basis for that assertion or any explanation as to how he arrived at that conclusion. And though Lukas asserts that "Defendants' illegal cases all bear the same indicia that the product is not authorized," *Id.* ¶ 24, he offers no hint as to what those indicia might be.

Plaintiff also submitted images of the two allegedly counterfeit cases it purchased from Defendants, which it claims "evidence that Defendants have counterfeited and infringed a great number of the OtterBox Registered Marks." *Id.* ¶ 25. But those photographs are presented without any explanation as to what aspects evidence counterfeiting, leaving the Court to

speculate as to what the photographs supposedly reveal about the authenticity of Defendants' products. Nor has Plaintiff provided any images of their authentic OtterBox products, thereby "depriv[ing] the Court of the most effective tool it has to determine whether a plaintiff has met its burden at summary judgment, namely a side-by-side comparison revealing whether there are slight deviations between the goods at issue and the authentic goods." *AL Infinity, LLC v. Crown Cell, Inc.*, 2023 WL 5097979, at *7 (S.D.N.Y. Aug. 9, 2023). Plaintiff thus falls far short of meeting its burden to demonstrate that Defendants' goods were actually counterfeit.

The cases in which courts have found that a movant carried its burden to establish that the products in question were counterfeit goods involved far more robust evidentiary showings than what Plaintiff offers here. In *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508 (S.D.N.Y. 2019), for example, the plaintiff demonstrated that the rolling papers and trays sold by defendants were counterfeits of its own "RAW"-branded goods by submitting photographs of both the authentic and fake products along with an affidavit from plaintiff's creative director detailing the specific discrepancies between plaintiff's genuine products and defendant's counterfeits, including differences in lettering, printing and paper quality, shape, and color and saturation. *Id.* at 525. Additionally, the plaintiff submitted an affidavit from its lead investigator, together with documentary evidence, tracing the chain of custody of the counterfeit goods. *Id. See also Gucci Am., Inc. v. Duty Free Apparel, Ltd.*, 286 F. Supp. 2d 284, 288 (S.D.N.Y. 2003) (granting summary judgment to Gucci where its expert explained "the bases for his conclusion that the five items in question are counterfeit" and plaintiff "accounted for the chain of custody of the item"); *Motorola, Inc. v. Abeckaser*, 2009 WL 962809, at *5 (E.D.N.Y. Apr. 8, 2009) (plaintiff met its burden by submitting declaration from company's Manager of Quality who determined that defendant's goods were counterfeit "based on the inferior quality of

the products and their packaging, the poor affixation of the marks to the products, the inconsistency of the materials used to make the products with the materials used to make genuine products, and the inconsistency of the printed words and images on the products and their packaging with the fabrication of genuine products and packaging").

Plaintiff in this case comes nowhere close to making such an evidentiary showing. Because there is a genuine issue for trial as to whether Defendants sold and distributed counterfeit OtterBox merchandise, Plaintiff's motion for summary judgment on its trademark infringement, trademark counterfeiting, and unfair competition, false designation of origin, and false description claims (Counts 1-3) is denied.

**2. Trademark Dilution (Count 4)**

Plaintiff's fourth cause of action asserts a claim for trademark dilution by tarnishment under 15 U.S.C. § 1125(c).

To prevail on a trademark dilution claim, a "plaintiff must show that its mark is famous and that defendants' subsequent use of the mark (or similar marks) in commerce is likely to cause dilution . . . by tarnishment." *Pfizer Inc. v. Sachs*, 652 F. Supp. 2d 512, 525 (S.D.N.Y. 2009) (quoting *Pan Am. World Airways, Inc. v. Flight 001, Inc.*, 2007 WL 2040588, at *18 (S.D.N.Y. July 13, 2007) (internal quotations omitted).

It is undisputed that Plaintiff's marks are famous and that Defendants' distribution of products bearing those marks qualifies as "use in commerce" as defined by 15 U.S.C. § 1127. *See* Dkt. No. 35-1 at 7, ¶ 11; 8, ¶ 12.[1] The Court therefore turns its attention to whether Defendants' use of Plaintiff's registered marks dilutes the quality of those marks.

---

[1] Plaintiff served its "Requests to Admit" on Defendants on May 2, 2025. Lee Decl., ¶ 15. Defendants did not respond to Plaintiff's Requests until June 16, 2025, well after the 30-day deadline imposed by Fed. R. Civ. P. 36(a)(3). *Id.*, ¶ 16. Accordingly, the matters in Plaintiff's Requests are deemed admitted. Fed. R. Civ. P. 36; *J & J Sports Prods., Inc. v. Meyers*, 2010 WL 11711401, at *2 (S.D.N.Y. Mar. 23, 2010) ("A party's failure to timely

Dilution by tarnishment is "association arising from the similarity between a mark . . . and a famous mark that harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). *See Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996) ("The sine qua non of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use."). "Likelihood of dilution is established when defendants have distributed a counterfeit product of inferior quality to the genuine product." *Johnson & Johnson v. Azam Int'l Trading*, 2013 WL 4048295, at *10 (E.D.N.Y. Aug. 9, 2013). *See also Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 460-61 (S.D.N.Y. 2017); *Burberry Ltd. v. Euro Moda, Inc.*, 2009 WL 1675080, at *14-15 (S.D.N.Y. June 10, 2009).

But as discussed above, this case presents genuine issues of fact which prevent the Court from determining whether the products sold by Defendants were of inferior quality such that their sale would dilute the quality of Plaintiff's marks – namely, whether Defendants actually sold counterfeit products. *See Fossil Grp., Inc. v. Angel Seller LLC*, 2025 WL 1031062, at *7 (E.D.N.Y. Apr. 7, 2025*); Johnson & Johnson & Lifescan, Inc. v. S. Pointe Wholesale, Inc.*, 2014 WL 12558573, at *27 (E.D.N.Y. Apr. 4, 2014), *report and recommendation adopted.*

And in any event, Plaintiff offers no evidence whatsoever – or even a conclusory allegation, for that matter – which would suggest that the phone cases sold by Defendants were of lesser quality than Plaintiff's products. *See Tommy Hilfiger Licensing, Inc. v. Nature Labs*, LLC, 221 F. Supp. 2d 410, 422 (S.D.N.Y. 2002) (granting summary judgment to defendant where plaintiff "submitted no evidence on whether there is a disparity in quality between its own" product and defendant's product); *Atari Interactive, Inc. v. Printify, Inc.*, 714 F. Supp. 3d

---

respond to a Request for Admission within thirty (30) days of service the same as if the party had expressly admitted each matter contained within the Request."). Defendants have not since moved to withdraw or amend those admissions pursuant to Fed. R. Civ. P. 36(b).

225, 237 (S.D.N.Y. 2024); *Momentum Luggage & Leisure Bags v. Jansport, Inc.*, 2001 WL 830667, at *12 (S.D.N.Y. July 23, 2001), *aff'd*, 45 F. App'x 42 (2d Cir. 2002).

Accordingly, summary judgment on Plaintiff's trademark dilution claim is inappropriate. The dilution claim will procced to trial so that a jury can determine whether Defendants' products were counterfeit and if so, whether Defendants' distribution of those products diluted the quality of Plaintiff's marks.

**3. New York General Business Law § 349 (Count 5)**

Plaintiff's final claim for relief is for deceptive business practices under Section 349 of the New York General Business Law.

GBL § 349 makes unlawful all "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." GBL § 349(a). However, trademark infringement claims are not cognizable under GBL § 349 "unless there is a specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Diesel S.P.A. v. Does*, 2016 WL 96171, at *8 (S.D.N.Y. Jan. 8, 2016).

Here, Plaintiff's GBL § 349 claim is based on the same acts that constitute the alleged trademark infringement, and Plaintiff has not proffered any evidence bearing on injury to the public interest "over and above the ordinary trademark infringement." *A.V.E.L.A., Inc. v. Est. of Marilyn Monroe, LLC*, 131 F. Supp. 3d 196, 217 (S.D.N.Y. 2015) (quoting *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 305 (E.D.N.Y. 2014)). *See also Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 352-53 (S.D.N.Y. 2014) ("ordinary trademark disputes do not pose a significant risk of harm to the public health or interest and are therefore not the type of deceptive conduct that [GBL § 349 was] designed to address") (internal quotations omitted); *Coach, Inc. v. Horizon Trading USA Inc.*, 908 F. Supp. 2d 426, 435-36 (S.D.N.Y. 2012).

Summary judgment on Plaintiff's GBL § 349 claim is therefore denied.

**4. Willfulness**

Plaintiff also moves for summary judgment on the issue of the willfulness of Defendants' alleged Lanham Act violations.

Although a plaintiff is not required to prove knowledge or intent to establish liability under the Lanham Act, *see Spin Master Ltd. v. Alan Yuan's Store*, 325 F. Supp. 3d 413, 421 (S.D.N.Y. 2018), the willfulness of Defendants' conduct is a prerequisite for the award of heightened statutory damages under 15 U.S.C. § 1117(c). *See generally* 15 U.S.C. § 1117(c) (while the ordinary range of statutory damages for counterfeit marks is $1,000 to $2,000 per counterfeit mark per type of goods sold, the upper limit of that range increases to $2,000,000 where willfulness is shown).

Here, Plaintiff alleges that it is entitled to heightened statutory damages under the Lanham Act because Defendants acted willfully. Specifically, Plaintiff seeks an award of $7,000,000 in statutory damages – $1,000,000 for each of its seven registered trademarks which Defendants are alleged to have infringed. This, of course, requires a showing of willfulness. In conducting this inquiry for claims asserted under the Lanham Act, courts in the Second Circuit ask "whether the defendant had knowledge that his conduct represented infringement or perhaps recklessly disregarded the possibility." *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, WL 74304, at *11 (E.D.N.Y. Jan. 8, 2007) (quoting *Nike, Inc. v. Top Brand Co.*, 2005 WL 1654859, at *10 (S.D.N.Y. July 13, 2005) (internal quotations omitted).

Plaintiff has not offered any direct evidence of Defendants' intentional infringement, but insists that the following examples provide circumstantial evidence of Defendants' willfulness:

*First*, Defendants distributed counterfeit "OtterBox" cases despite negative feedback from eBay customers claiming that certain unidentified products sold by Defendants were "counterfeit" or "fake." *See* Lukas Decl., ¶ 12.

*Second*, Defendants ignored a cease-and-desist letter and multiple follow-up emails from Plaintiff's counsel. *See* Dkt. No. 37 at 13.

*Third*, Defendants continued to distribute the allegedly counterfeit products despite Plaintiff's filing of this lawsuit. *Id.*

For their part, Defendants offer what a reasonable juror might consider to be innocent explanations:

*First*, Defendants never received any customer complaints suggesting that any OtterBox-branded items it sold were counterfeit. Kunzi Decl., ¶ 24. And while Defendants, like any high-volume seller, occasionally receive negative or inaccurate feedback, their overall feedback rating is overwhelmingly positive, and "it is not feasible to individually audit every piece of feedback, which is why eBay emphasizes overall feedback percentage, not isolated comments." *Id.*, ¶ 25.

*Second*, Defendants did not see Plaintiff's cease-and-desist communications because they were sent to an unmonitored email inbox not connected to Defendants' main business accounts. *Id.*, ¶ 26.

*Third*, Defendants removed all OtterBox-branded listings from eBay after being served with Plaintiff's lawsuit and have not listed any OtterBox-branded products since. *Id.*, ¶ 30. To the extent any OtterBox-branded listings remained on eBay, those listings were unintentionally overlooked during the removal process. *Id.*, ¶ 31.

Additionally, Defendants assert that the allegedly counterfeit products "appeared completely legitimate in packaging, construction, and labeling," giving them no reason to

suspect they were counterfeit. *Id.* ¶ 16. Had Defendants believed that they were counterfeit "even for a moment," they would not have sold them. *Id.*

A reasonable juror making credibility judgments about the parties' respective positions may very well conclude that Defendants did not knowingly or intentionally sell counterfeit OtterBox products. Of course, the same juror may also find that Defendants willfully infringed or recklessly disregarded the possibility of infringement. But because the evidence is susceptible to more than one interpretation, the Court is precluded from granting summary judgment on the issue of Defendants' willfulness. *See Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, 2007 WL 74304, at *13 (E.D.N.Y. Jan. 8, 2007) ("[S]ummary judgment is inappropriate where, as here, the Court may not make credibility judgments, plaintiff fails to offer conclusive evidence regarding defendants' intent, and defendants deny their knowledge of the infringing activity and dispute the inferences to be drawn from evidence suggesting that defendants willfully infringed or recklessly disregarded the possibility of infringement"); *BBK Tobacco & Foods, LLP v. Galaxy VI Corp.*, 408 F. Supp. 3d 508, 526 (S.D.N.Y. 2019).

**Conclusion**

For the foregoing reasons, Plaintiff's motion for summary judgment is DENIED.

The Clerk of Court is directed to remove the motion at Docket Number 34 from the Court's list of open motions.

This is a written opinion resolving a motion for summary judgment.

Dated: July 21, 2026

[signature]

U.S.D.J.

BY ECF TO ALL COUNSEL